The first case is United States v. Modanlo, two appeals, 13-43-78 being the lead appeal, and Mr. Dewey is going to speak for the appellant. Be pleased to hear from you, sir. May it please the court, at its core, this is a case about the proper allocation of subject matter jurisdiction between this court and the district court. Relevant to that overarching proposition, I wish to argue three points today. First, that Mr. Modanlo's notice of appeal from the district court's order denying his motion to dismiss on count 11 divested the district court of jurisdiction not only over count 11, but over counts 1 through 10, as those counts were related to count 11. Second, that jurisdiction was never restored to the district court by operation of the dual jurisdiction doctrine. And third, that as a consequence, Mr. Modanlo's subsequent trial and conviction are a nullity and must be vacated for want of subject matter jurisdiction. You say as to the entire indictment? That is correct, your honor. It is our position. Now that's a change in position from what you took before the district court. Your honor, to an extent, yes, and we conceded that in our papers, and we hide that point. That's a mousetrap under the district court right off the bat. I mean, I'm not sure about everything else, but you can't take one position to a district judge in the middle of a trial. Like, you have jurisdiction, judge, to go forward on counts 1 through 10, but you don't have it on count 11. You didn't come up here and say you didn't have jurisdiction on counts 1 through 10. I mean, you just changed your position 180 degrees. I guess two responses to that, Judge King. The first response is that yes, in an ordinary case, in most cases, there would probably be waiver or forfeiture of our position. But we submit there is not here. Maybe it's jurisdiction, we review it anyway. It's jurisdiction we have to review on our own initiative, even if the lawyers don't raise it. But you all changed your position. That's what I'm getting at, and that's a bad thing for lawyers to do. Tell a district court one thing. Like, you have jurisdiction, judge, we agree you do, on counts 1 through 10. You didn't come up here and tell the panel the judge didn't have any jurisdiction on counts 1 through 10. Judge King, if I may, to your point, the error does go to subject matter jurisdiction, but we did raise the question in front of Judge Massetti as to whether or not he had jurisdiction to proceed to try the case in its current configuration. I'm talking about counts 1 through 10. Absolutely, Your Honor. We raised the question. I apologize. You actually moved the court to proceed with the trial as to counts 1 through 10 and to allow those counts to go to the jury. So that's completely opposite of what you're saying now, as I understand it. Judge Thacker, only to an extent, if I may. In the first notice of appeal, we took the position that the district court could not proceed to try the case in its current configuration. He did not have jurisdiction to proceed to try the entirety of the third superseding indictment. Subsequent to that point, several events transpired which I would submit are relevant here. First, the government affirmatively filed a motion to proceed to try all 11 counts in the current trial configuration. And the judge agreed with that? Correct, Your Honor. Let me back up. You filed the first notice of appeal on which day of trial? It was filed mid-trial, Your Honor. Mid-trial? Yes. All right, then how long was the trial? How long had the trial been ongoing? Your Honor, I believe the trial had been ongoing for two weeks. I don't want to give you an exact trial day count. Had you asked the judge to continue the trial? We had not, Your Honor. Before the trial started, did you ask the judge to delay the impaneling of the jury? We did not, Your Honor. Did you seek mandamus in the Court of Appeals to get the judge to rule on the asserted motion about collateral estoppel? No, Your Honor, we did not. Again, to circle back, Your Honor, the judge below affirmatively granted the government's motion to proceed. And then in response to that motion... You're talking about the motion after you filed the notice of appeal? After we filed our first notice of appeal, Your Honor. But they said, they asked him to declare it frivolous and proceed. Correct. And he said, well, it's almost frivolous, but I'm not going to say it's frivolous. Correct. Something like that. He refused to find it was frivolous, Your Honor. And then he granted the government's motion to proceed. But what did he say was almost frivolous? How close did he say it came? He said it was borderline frivolous. Borderline. Borders on the frivolous, Your Honor. Borders on frivolous. But he did not find it frivolous. The notice of appeal borders on frivolous. And the notice of appeal only related to count 11. That is correct, Your Honor, but under this Court's divestiture cases, the district judge is required to determine the scope of divestiture from the notice of appeal. And that is a subject matter jurisdiction question under the en banc opinion in Britain. Is there any authority somewhere that says we can't declare appeal frivolous at this point? Yes, Judge King. There is. There's authority that we can't. Yes, Judge King. Is there a controlling authority that is precedent on this Court? I would submit, Your Honor, that both Montgomery and Levin make clear that under the- Montgomery, that's Judge Motz's case. That is correct, Your Honor, that under Montgomery and Levin, this Court made very clear that the only way the dual jurisdiction doctrine comes into play is if a finding of frivolity is made prior to trial and prior to the proceeding in question. In other words, it only comes into play if the district court- He couldn't have done it prior to trial because he hadn't filed a notice of appeal prior to trial. No, that's true, Your Honor, but he could have done it at the time of the notice of appeal. And we would submit- He could have, but he almost did, but he didn't. And the issue that you're trying to raise in that notice of appeal as to the count of Levin is pending in the third appeal that you have here that's still ongoing. I mean, you're going to have that issue determined if you want it to be determined. Correct, Judge King, but several responses to your question there- You're not being denied an appeal. What are you being denied? Well, Your Honor, we would submit a right to an interlocutory appeal here. No, but what are you being denied? You're not being denied the appeal on the issue you were trying to raise, which was whether the bankruptcy court proceedings somehow barred the criminal prosecution. Right? That's what you're saying? That's your count of Levin issue? Correct, Your Honor. And you're not going to be denied it because you were convicted and sentenced on it and you have an appeal pending separate from these two that would contain that very issue. You might have other issues. I don't know what else you have, but you'd be perfectly entitled to raise that issue post-trial. Absolutely, Your Honor, but- So what are you being denied? Relevant to the two notice of appeals here, Mr. Madonlo had a right to an interlocutory appeal on the district court's denial of his motion to dismiss. But the objection is not to be tried. Correct, Your Honor. That's how that stuff came up. It's not to be tried under the Cohen series of cases, but you were tried. But you were tried. Your Honor- And the Cohen has a bunch of factors in it, one of them being importance. The importance of the issue. You're familiar with the Cobra case? Yes, Your Honor. We just decided a case here called Cobra Natural Resources where we talked about the need for the importance of the issue to implicate the collateral order doctrine. You understand that? No, absolutely, Your Honor. We talked about how the Supreme Court's cut back on this collateral order stuff. Absolutely, Your Honor, but- It's got to be important. Well, how can this issue be important if you are going to get it decided in the third appeal? Your Honor- The final order appeal. It is important because the trial had not concluded when Mr. Madonlo filed. The trial has concluded as of now. The trial has concluded. Your Honor- The trial has concluded. It had been going two weeks before you filed a notice of appeal. Correct, Your Honor, but we would- I'm concerned about opening the door to lawyers stirring things up in the middle of a trial. The public's got a right to have cases tried on their merits. Absolutely. Not to have them thrown out on technicalities. Absolutely, Your Honor. Respectfully, several responses to your question. We would submit this is here properly as a collateral order because it is brought here properly as a collateral order as to the first and second notices of appeal. If it satisfies the Cohen factors, one of which is the importance factor. Correct, Your Honor, and this- How is it important if you're not going to lose the appeal? I mean, you're not going to lose the right to the appeal. Because- You have the right to appeal and you have a notice of appeal pending in this court that encompasses that particular issue. That hasn't been resolved. Correct. It hasn't even been fully briefed. Correct, Your Honor, but under Rubion, this court's case in Rubion- How could it be important? The court has already decided this question in Rubion. There is a right to an interlocutory appeal on the denial of a motion to dismiss on collateral estoppel grounds. Yes, the notice of appeal was filed. There's a lot of other things that go into it. Correct, Your Honor, but this court is- Whether it's a proper collateral order appeal. What's your response to Judge King's concern that the notice of appeal was filed right in the middle of trial? Your Honor, that was the first point at which the notice of appeal could be filed. The district judge did not rule until May 1st, and FRAP 4B is explicit. Well, the government says he ruled back four months earlier. Your Honor, he may- He told you, you understand this is what I'm going to do. I'll write him up, because this is an important issue, and he hadn't done so at the time the trial started. Correct. You didn't ask him anything about it. You didn't say, wait until you finish this ruling, because we want to get an interlocutory appeal, if you do what you said you were going to do, if you continue to do what you said you were going to do. You didn't ask him to wait. You didn't say, don't strike the jury, or don't select the jury. You didn't come to this court and say, we want to mandate Mr. Judge to enter an order. You didn't do anything like that. Correct, Judge King, but we would respectfully submit- There's some diligence responsibilities on defense lawyers in this context. There is, Judge King, and we admit- It looks like on the face of it that somebody's trying to game the system. Your Honor- And that's not something that sits well with once in a while. Several responses to that, Judge King. We freely admit that, yes, it may have been prudent to take the steps that you discussed, but the issue that you raised, that the government raises, is one of forfeiture. And before a forfeiture can be imposed, we admit there has to be a violation of the established rules of the road. Mr. Madonlo filed his motion eight months prior to trial. The district court said it would rule on it in a timely fashion. The district court knew it was an interlocutory order, and the district court was required to rule on that prior to trial by Operation of 12D. And to Judge Thatcher's point, Mr. Madonlo filed his notice of appeal as soon as he practically could. Indeed, if Mr. Madonlo had filed a notice of appeal from the January 10th oral ruling, under Operation of FRAP 4B2, that appeal would have been a nullity and would have had no existence until the district court docketed its order. Well, you could have trotted. You could have trotted. Is that necessarily true in the double jeopardy context? Yes, Judge Davis. Fine, fine. What if the judge had waited literally until the end of closing argument before submitting the case to the jury, entering the order? Would you then have a right to interlocutory appeal? We would— If that's the court of jurisdiction to take the jury's verdict? We would submit yes, Your Honor, because an essential step of the trial— as a de facto denial. I would have thought that, you know, before you swore the jury, since the Fifth Amendment right is not to be tried, right? That's the right you're here trying to vindicate. Correct, Your Honor. The right not to be tried for a lawyer to sit there and permit the jury to be sworn and then proceed with trial waiting for this order. I'm just not sure you fully answered Judge King's question about what are you denying. You acquiesced in the commencement of trial. Respectfully, Judge Davis, we would disagree because, again, there is no affirmative obligation to take prudent steps to force the district judge to comply with the rules of procedure. I'm talking about the Fifth Amendment prohibition on double jeopardy. Absolutely, Your Honor. It's not simply a rule of procedure. Your client had a right not to go to trial. And counsel sat there, and the trial went forward. Your Honor, respectfully, there was nothing to appeal. And on the question of whether or not there was waiver or forfeiture, yes. Would it have been prudent to raise this issue pre-trial? I agree with you, Your Honor, but the question here— Were you in the trial? No, Your Honor, I was not. Normally, the way they used to do it when I was trying cases, before the judge swears a jury, he says, has anybody got any objections to swearing the jury? Right now, we've selected the jury, we're ready to swear it in and go into trial. Is there anything counsel has to say about that right now? Jury acceptable to the government, jury acceptable to the defendant. And the government says yes, and the defendant says yes. And then you go forward. And you said yes. You said yes. Your Honor, we went forward with the trial, but again— You said yes. And how do you get around that? If what you're saying now, you shouldn't have said, then you abandoned your client. And that's between you and him at this stage. We're on a direct appeal. Your Honor, respectfully, the issue was when could we raise this claim? Until there was a docketed order, as a technical matter, it could not be raised. Mightn't the conduct of trial— You could have litigated that issue and you didn't try to. You could have filed a notice of appeal two months earlier and said the judge said he's ruled and we hadn't entered the order yet and we don't want to be deprived of our right of appeal and we don't want to abandon our client on his Fifth Amendment rights, and so we're going to try to take an appeal from his oral ruling from the bench. And then the government could have filed a motion to dismiss it if they wanted to and you all could have litigated it before the trial had ever been contemplated or the jury had ever been selected. We wouldn't have been in this mess. May I respond? No, but you didn't do it. May I respond? Absolutely, you can respond. Your Honor, again, there would have been nothing to appeal. There would have been something to appeal, but that issue arguably there would have been something to appeal and you would have given the district court and this court an opportunity to consider it. But you didn't do it. Your Honor, respectfully, under the plain text of the threat— And maybe all the blame is not with you. Maybe the blame somewhat lies with the government and it somewhat lies with the district court, but there's enough blame to go around and the public is entitled to a decision on the merits normally when an indictment is returned. Absolutely, Your Honor, but again, we would submit the text of the frap is clear. Mr. McDonald could not have appealed until there was a docket entry. There would have been nothing to litigate. 4B2 is explicit. That notice of appeal would have been treated as a nullity. Cases from this circuit and other circuits make clear you need a written order to appeal and indeed the government has repeatedly taken that position in the context of appeals under 3731, Your Honor. So, yes, was there a lack of prudence here? I fully concede that, Your Honor. But this is a question of forfeiture and forfeiture is about following the basic rules of the road, not engaging in what everyone has concluded with 20-20 hindsight may have been prudent. And if I may, Judge Davis, yes, the trial had started, but the trial had not been concluded. There are different phases to the trial and we would submit that the right not to try can still be preserved in part. Obviously, part of the trial had proceeded, but part hadn't. Mr. Madonlo hadn't been put to the burden of putting forward his defense. The case hadn't been submitted to the jury. So, yes, part of the trial had commenced, but part of the trial remained to go and part of the trial remained to be tried. So we would submit that does implicate the concerns underlying the double jeopardy clause that this Court held in Rubion are subject to interlocutory appeal. As my time has expired, I thank the Court. Yes. Thank you, Mr. Dooley. You saved some time. Mr. Rahman, did I mispronounce that? Mr. Rahman. Rahman, I'm sorry. I've done that before to you. No, we apologize, sir. Thank you very much, Judge King. May it please the Court. My name is Sujit Rahman. I'm the Appellate Chief for the District of Maryland, appearing on behalf of the United States. Judge King, I would like to get to the mousetrap gamesmanship idea that you've talked about in your questioning regarding my opponent. I would like to start, though, with the government's principal contention in this case, and that contention is that this Court lacks jurisdiction over the defendant's so-called interlocutory appeals. Judge Mecedi's ruling on January 10, 2013, was plainly, in our view, a final decision within the meaning of Section 1291. There was no hesitance. There was no tentativeness. There was no incompleteness about that ruling. Judge Mecedi stated very clearly, and I can read the relevant portion to the Court. It's on page 25 of our brief, page 1105 of the joint appendix. Judge Mecedi says the Court is going to deny the motion. I'm going to file a written opinion. Just go ahead on the assumption that the motion is denied. I don't know how quickly we'll get the opinion out, et cetera. I just wanted to declare what my holding is. What my holding is. At that point, that was a final decision within the meaning of 1291 that was immediately appealable. Not pursuant to Rule 4 of the Rules of Appellate Procedure, it was not appealable because it was not entered on the docket at that point. Respectfully, Judge Thacker, I would disagree with that. Under Cohen, under Abney, under this Court's opinion in Revayan, which Judge King authored, the right is immediate. Upon a final decision, a defendant has an immediate right to come to the Court of Appeals and vindicate his right, quote, not to be tried. 1291 doesn't say anything about a judgment or an order. It just talks about decisions. It says a final decision. That's right. That's exactly right. And here's my point, Judge Thacker. Don't lawyers, when practicing law, ordinarily look to the rules first? It's the rules of the road that you are to follow. They look to the rules, Judge Thacker, and Rule 4b-2 says, if you file a notice of appeal before entry of judgment, it's not, as the defendant says, invalid or a nullity. It's simply postponed until the order is entered. My point, Judge Thacker, and this is what I really wanted to respond to. It's activated on the entry of something else. Well, it is active. On the entry of the order. Well, what happens is. It doesn't happen until May 1st. That's right. But it is immediately appealable upon the final decision. And Rule 1. It's a statute. It's a rule. But 1291 says final decision. That's right. And this is exactly my point, Judge King, and this is a direct response to you, Judge Thacker. Rule 1 of the federal rules says that the rules themselves cannot expand or restrict the jurisdiction of the Court of Appeals, right? The rules have to defer to the statute. And this is my point, Judge King. It is immediately appealable. Jurisdiction is available in this court at the minute Judge Mazzetti ruled on January 10th, 2013. So you can't construe Rule 4B in a way that restricts this court's jurisdiction to the time when the order is entered. Jurisdiction is immediately available upon the entry of the final decision. And what the Notice of Appeal does is simply an instrument that transfers formally jurisdiction to this court. But jurisdiction is vested in this court at the minute that the final decision is rendered. And that's what Judge Easterbrook talks about in the Apostol decision, right? The Notice of Appeal and the mandate, right? Those are the two bookends that, in formal terms, describe the jurisdiction, the allocation of authority between the district courts and the appellate courts. But as this court's opinion in Montgomery makes very clear, especially in this double jeopardy collateral estoppel context, you don't subscribe to an incredibly formalistic view of the law. There has to be a practical consideration of the allocation of authority between the district courts and the appellate courts. Judge Davis, I know you were the district judge affirmed in Montgomery. And I wasn't sure how it was going to come out. But I'll tell you that. So I read Judge Mazzetti's opinion. And you did it exactly right, Judge Davis. And the point was, you know, the mandate had you. That was right before I did it. Well, it's right now. It's right now. And I guess my point is, you know, you didn't have the mandate, right? You proceeded with trial before the mandate had issued. And this court affirmed. So, Judge Thacker, to get back to your point, the formalistic view, this highly technical argument that the defendant is presenting in this case where you've got the Notice of Appeal that divests the district court of jurisdiction and the mandate that releases the district, that's not how it works, especially in the Cohen-Abney extremely unique, extremely sui generis almost category of cases that we're talking about. When you're talking about dual jurisdiction, inherently it's a functional approach. It's a practical approach. It's not me saying it. It's the Supreme Court in Cohen saying it. It's the Supreme Court in Abney saying it. It's this court in Montgomery saying it. It's Judge Easterbrook in Apostol saying it. The allocation of authority between the courts in this specific particular context has to be done in a practical consideration. And so, Judge Thacker, again, to get back to you, and I recognize that it troubles your honor, this is my answer. You don't have a strictly sort of strict reading of Rule 4B in this context because if you read it strictly, you're actually restricting the jurisdiction of the court of appeals. And respectfully, this court can't do that because Section 1291 says you have jurisdiction the minute the final decision is rendered. Getting back to my original point, this court doesn't have jurisdiction because the defendant did not timely file a notice of appeal. And that's really probably our strongest argument in this case. You've got the final decision on January 10th. Trial begins on April 23rd, I believe. There is no notice of appeal filed until the middle of trial. Judgment said he did exactly what he was supposed to do, which is three months before trial, render his decision. He said, I don't think there's a double, excuse me, And it's up to the defendant, which, by the way, in the federal courts every day, defendants file protective notice. Why didn't you go down to the clerk's office and enter an order to say the motion's denied? You probably should have. You probably should have. Why didn't you all ask him to go down there? Well, I don't think it's all the defendant's fault here. It's everybody's fault. Well, I don't think. I don't agree with this point, why we're here. I don't disagree with that point, Judge King. I think probably everyone could have done a better job. But I think the point I'm trying to make is I don't think there was actually any confusion about any of this. I think the defendant knew that his motion had been denied. I think the government knew his motion had been denied. And Judge Mazzetti certainly knew that he had denied the motion. And so, really, it's the defendant thinking, well, gosh, what can I do? I can wait until the middle of trial, stick this poison pill in the back of my pocket, and use it manipulatively in the middle of trial and try to divest the entire court. Well, if you all went up there and asked the judge to declare it frivolous, and he almost did, but he didn't, and you all didn't pursue it, you could have pursued that a little harder, it seems to me. Well, Judge, you've got to decide it's frivolous, or you're creating a mess for us down there in Richmond, maybe. And this is where the practicality or sort of the realism comes into play, Judge King. You know, this motion, this notice of appeal, was filed in the middle of trial. The government was in the middle of an incredibly difficult, incredibly complex, seven-week criminal trial involving witnesses coming in from Switzerland, folks eventually came in from Iran, foreign business records. One of the most difficult trials that our office, the District of Maryland, has prosecuted in the last 15 years, one of the most difficult cases. In the middle of trial, the defendant pops up and says, notice of appeal. So imagine the burden on the trial prosecutors in this case, who are trying to carry the heaviest burden that the law recognizes, beyond a reasonable doubt. And in the middle of trial, they suddenly have to put on their appellate lawyer hats and say, you know, let's respond to this. What do we even do when someone files an interlocutory appeal in the middle of trial? Our trial prosecutors did the very best they could, which was to research the law in the middle of trial, in the middle of carrying the heaviest burden known to the law, filing a motion that was actually appropriate, that was actually appropriate, asking the district court to find the notice of appeal to be frivolous. So the government did exactly what it was supposed to do. The district court, candidly, I don't think Judge Mazzetti recognized what the legal term of art that frivolity entails. I think, frankly, he was being polite. You've got three federal public defenders on the other side, all working very hard at taxpayer expense, doing their jobs. And Judge Mazzetti – The common law firm wasn't in it at that point? No, it was the public – taxpayer paid for both sides of the – The public defender – They're still in the case, by the way, for reasons that are not entirely clear. But in any event, the point that I'm trying to make is, here in the middle of trial, you've got public defenders who, you know, are very well regarded in our district. And I think Judge Mazzetti, frankly, didn't want to say that what they're doing was wholly frivolous. He said, I think it borders on the frivolous. Let's move on. We're in the middle of trial. And this is why – Can I ask you the same question I asked Mr. Dewey? Can we find it frivolous right now? You could. He says we can't. He says you cannot right now say that the appeal back there was filed in the middle of trial is frivolous. The Court of Appeals has no authority to do that. Well, I disagree with that. I think this court in Montgomery found the appeal to be frivolous. It even said that that footnote three or something was said in there. They admitted that they had to say it was wrong, didn't they? I don't recall that, Your Honor. What I recall about Montgomery – I think they said that Judge Motz got it wrong in footnote three. Oh, they did. That's for the other side. That's what I'm talking about. Oh, yes. The other side said Judge Motz got it wrong in footnote three. Well, Judge Motz gets very few things wrong. So they had to argue that Montgomery was wrong. Yeah, well, I mean, at the very least, it's, you know, a published opinion of this court. It's binding on this panel. But here's my point, Judge King, and I don't want to lose sight of – Well, it is. It is. If they want to pursue it. Yeah, that's right. But I guess I'm trying to make a deeper point, Judge King. You're actually assuming you have jurisdiction in this case, right, to even say that the appeal was frivolous. My contention, the government's primary contention is you don't have jurisdiction because, again, there was no – I could assume that we did. Yes. I understand. But without deciding, we could say, well, maybe we don't want to decide that. We can just go ahead and say, well, maybe if there was an appeal, a proper appeal, it was a frivolous appeal. Right. And that satisfies it. And so we don't – and a frivolous appeal doesn't divest the district court of anything. That's exactly right. Everybody knows that. Everyone knows that. I would make a further point there, Judge King. You know, what makes this case unique compared to every one of the other cases that are cited in the papers – Hines, Apostol, Lepo, you know, Dunbar, which is the Fifth Circuit case. In every one of those cases, the frivolity question was resolved in Montgomery. With Judge Davis's case as a district judge. All of those issues were resolved pre-trial. Or, excuse me, you know, sort of in the context of how do we deal with this notice of appeal that's been filed pre-trial. Right? In Montgomery, Judge Davis, you were dealing with these issues before trial. The case came up here before the first day of trial. And, in fact, trial was not even – as far as I can tell by reading the opinion, I spoke with the prosecutors yesterday, trial wasn't even delayed because this court summarily disposed of the frivolity question. Are you saying we couldn't do it now? We couldn't decide now that it's frivolous? Assuming you have jurisdiction, you can decide now. You absolutely can decide now. And that would – What's your support for that? Well, it would be Montgomery. The idea that this court has already held that if the district court is unsure or somewhat, you know, equivocating about whether or not the appeal is frivolous, certainly this court has the authority to decide that. I would say, though, Judge Musetti wasn't even really unsure. I mean, frankly, again, I think he was just being polite. You have to read something into it. I mean, you may be right that he was just being nice, that they didn't want to accuse the public defender of violent, frivolous pleading. That's a bad accusation to make against the lawyer. Absolutely. But we don't – we have to go with what he said, don't we? You do have to go with what he says. But, again, that's where I come back to the context of this case. In every single one of these cases, the district judge is making his frivolity decision before trial. So he's got the time to think about it, to really focus. This is happening in the middle of a seven-week trial where literally it's the morning of, you know, I think it's day six. Actually, the notice of appeal, the frivolity decision, is made on the morning of day 13 of this federal criminal trial. On May 15, 2013, the trial began April 23rd. I mean, certainly Judge Davis, having presided over trials, you know, you're in the middle of a trial here, and all of a sudden this thing pops up. I mean, you're focused on a bunch of other things. It's all the more reason why this defendant should have moved before trial. If he had a right that he wanted to vindicate, the whole point of the dual-jurisdiction doctrine is to make sure that there is orderly prosecutions, orderly allocation of authority between the district courts and the appellate courts. What the defendant did in this case is exactly the opposite. Not only has he switched his position 180 degrees on this dual-jurisdiction issue, but what he did was try to throw a monkey wrench into the entire orderly prosecution of this case by waiting to raise the frivolity issue, by forcing the government to raise the frivolity issue in the middle of trial when a very busy, a very hardworking district judge is busy with other issues on his mind, when the government is busy with other issues on its mind. As I say, trying to carry the highest burden that the law recognizes. These trial prosecutors are in the middle of an incredibly difficult trial, and all of a sudden this appellate issue arises, which should have been raised before trial. So that is essentially the government's position in this case, Your Honors. I do want to touch very quickly upon one point Judge Davis said, and then I'm happy to sit down. There is this double jeopardy issue here, the right to be free of going to trial. And it's not just being free of the right to actually have the jury looking at you. It's the right to be free of even the exposure to trial, the simple cost of pretrial litigation, the fact that your lawyers have to prepare. All of those are encompassed in one aspect of the double jeopardy right. So certainly there are two aspects to the double jeopardy right. One is the right to be free of two convictions, and that's something this defendant can vindicate in his merits appeal. But the second right, the sort of threshold right, is the right to be free of even being exposed to trial. And that's exactly what the defendant waived in this case, or he forfeited it, by failing to timely assert that before trial it's extinguished. And that's the point. We cite the Nicoletti case out of the Fifth Circuit, where essentially the defendants waited until trial to see how basically everything would turn out, realize that things weren't going so well, and then they appealed. That's exactly the kind of procedure that this Court should not countenance. I would also say, and this is my final point, whatever decision this Court renders in this particular criminal context will have very wide applicability in other areas of the law. The collateral estoppel idea, the double jeopardy idea, is freely transferable to the civil rights context, to the qualified immunity context. If you endorse what the defendant did in this case, then in civil rights cases, in 1983 cases, defendants will do exactly the same thing. They will wait until the middle of trial. They will wait to see how things turn out. And then those government officials will claim immunity. And it will create a huge monkey wrench in how the system works. And so obviously we're not talking just about criminal cases here. We're talking about a wide, wide implication for the decision that this Court ultimately renders. Your Honors, I don't want to go on and on. If there are any further questions, I'm happy to answer them. If not, the government is happy to submit. Thank you very much, sir. Thank you, Your Honor. Appreciate it. Mr. Dewey? May I proceed, Your Honor? Go ahead. Your Honor, several points in response. On the waiver point, the government has admitted that everyone bore blame here for a failure of prudence in terms of the pretrial proceedings. And we would submit it as incongruent. I thought that was your admission also. Exactly, Your Honor. We would submit it as incongruent to impose waiver. Everybody agrees there was a lack of prudence. And we would submit it as incongruent. That both sides are at fault. I guess you say the judge is at fault, too. To an extent, Your Honor, everyone could have handled the proceedings better. But that is not grounds to impose the drastic remedy. We have to deal with the cards we're dealt, I guess. Right? Correct, Your Honor. But we would submit that's not a basis to impose the drastic remedy of forfeiture. And, Judge Thacker, to your point, Rule 4 is explicit. Rule 4B is explicit. And my argument is clear, Your Honor. The notice of the appeal had it. But the statute on jurisdiction is also explicit. It says final decision. And the final decision is appealable. Correct, Your Honor. But that... The rule can't change that. The rules have to be... They're just implementing that. Absolutely, Your Honor. That 1291 point is pretty good because it doesn't say judgment or order or anything. It says final decision. Correct, Judge King. But under Rule 4B, in order to take the appeal, you have to have a docketed entry. And Rule 4B governs the timeliness of an appeal. It says if the appeal is taken within 14 days of the docketing of an entry, it is timely. And there is no dispute that Mr. Modano took his appeal within 14 days of the docketing of his entry. And to my colleague's point about waiting until the middle of trial to raise the issue, Mr. Modano didn't. He raised it eight months prior to trial. And third, Your Honor, the rule the government proposes is somewhat unworkable. Litigants, the clerk, and court... But raising it is not the same as seeking appellate review of an adverse determination. I... You seem to be collapsing those two very distinct concepts. Judge Davis, I do not intend to collapse them. I took the argument to be that litigants will look to this case and try to raise the issue mid-trial. And we're certainly not arguing that that was based proper. That would be improper. No, I don't think that was the government's argument at all. They'll be raised in accordance, you know, qualified immunity motion to dismiss. And then if we... The argument is if we allow your client to vest jurisdiction under these circumstances, what's the key... A civil defendant claiming qualified immunity or some other interlocutory appeals to divest the District Court of Jurisdiction in the middle of trial. What's your response to that? Several responses to that. First of all, a reaffirmance of the clear principles of jurisdiction, follow Rule 4B, and follow the divestiture rules, and make these rulings in a timely fashion would solve that problem. And second, Your Honor, this isn't a poison pill. You say if the timing of it comes up in the middle of trial, it's just tough luck for the system. And that applies, you told Judge Davis, even if they're getting ready to make the closing argument. And I assume you'd say that applies in this case. The jury was out for a week. If they file a notice of appeal in the middle of the jury deliberations, you'd say that that's the end of it. And I'm sure you'd say after that that your man gets off completely of the 11 counts because the jury's been empaneled and sworn, and you've got clear double jeopardy. No, Your Honor. No, Your Honor. No, Your Honor. We do not. This goes to the poison pill point. Jurisdiction is divested. At that point, an acquittal would have been an anology. And that is why we would submit there is not a potential for abuse as a poison pill. Had Mr. Madonlo been acquitted, that acquittal would have been an analogy, and as we state in our brief, the government would have been perfectly entitled to retry him. You said better things in your brief than you said back then. I mean, now we can't, how can we, I'm not too sure we can rely on what you all say when you say one thing on the district court and one thing on appeal. Speaking of one thing in one court and one in another, are there cases in which the government has used Rule 4 to protect its own interlocutory appeals in the way that you're arguing? Yes, Your Honor. As I referenced earlier in a reply to the government's 28J, there is United States v. Lee, and there are cases following that. And there, there was an issue in the language between 3731, which makes it an order appealable on judgment being rendered, and 4B, and the government has argued successfully in multiple circuits for B controls. I see my time has expired. If I may, two more. Finish your answer there. Yes, if I can finish my answer, and may I make two quick more points, Your Honor? Go ahead. I want to be responsive to your question, Judge Fink, and Judge Thacker's question about a retroactive finding. The language of Montgomery is clear. The finding has to occur prior to the proceeding in question because the finding restores divestiture, and the Tenth Circuit explicitly considered in Stewart v. Donges this question. Did you say even if we think the appeal was frivolous, we can't say so? After the fact, Your Honor? No, in the Tenth Circuit. We can't say so. The Tenth Circuit has held that. The D.C. Circuit has held that. The Seventh Circuit has held that, an opinion by Judge Easterbrook. And to the frivolity point, very quickly. Judge Easterbrook's not on this Court. That is correct, Your Honor. To the frivolity point, if I may, Your Honor, there was some argument that, oh, the district judge may have really found the appeal frivolous but didn't want to say it. His order, and this is at J1162, is explicit. The government's motion to certify is denied, and Montgomery is explicit. Without a finding of frivolity, the dual-jurisdiction doctrine is not invoked. So, Your Honor, in summary, we submit there was divestiture here, and because of that divestiture, the district court lost jurisdiction. I thank the Court. Thank you, Mr. Dooley. We appreciate it. We're going to come down in Greek Council.
judges: Robert B. King, Stephanie D. Thacker, Andre M. Davis